UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

METROPOLITAN LIFE,

               Plaintiff,

v.

JEMISON, *et al.*,

               Defendants.

_____/

Civil Action No. 22-11088

George Caram Steeh
United States District Judge

David R. Grand
United States Magistrate Judge

## REPORT AND RECOMMENDATION TO GRANT IN PART JESSIE JEMISON'S AND DANNY JEMISON'S MOTION FOR SUMMARY JUDGMENT (ECF No. 33)

This is an interpleader action brought by plaintiff Metropolitan Life Insurance Company ("MetLife") concerning conflicting claims related to plan benefits owed under the General Motors LLC ("GM") Group Life Insurance Plan (the "GM Plan"). In short, the GM Plan is an ERISA-governed employee welfare benefit plan sponsored by GM and funded by a group life insurance policy issued by MetLife, relating to life insurance coverage for GM Plan participant Herbert B. Jemison, who is deceased (the "Decedent"). MetLife brought this action to resolve competing claims for the proper distribution of Decedent's GM Plan benefits between interpleader defendants Lori Jemison ("Lori"), Ronald Jemison ("Ronald"), Danny Jemison ("Danny"), Donald Jemison ("Donald"), Rena Hankins ("Rena"), Andre Jemison ("Andre"), Cedric Jemison ("Cedric"), Jynnifer Walker ("Jynnifer"), Timmy Jemison ("Timmy"), Erica Jemison ("Erica"), Melissa Brown

("Melissa")[1], and Jessie Jemison ("Jessie").  On March 22, 2023, the Honorable George Caram Steeh issued an Order granting MetLife's motion for deposit of plan benefits, judgment of interpleader, and dismissal, which directed MetLife to deposit the GM Plan benefits into an interest-bearing account maintained by the Court in the amount of $36,245.00 (the Plan benefits of $51,216.00 minus $14,971 attributable to MetLife's costs and attorneys' fees incurred in bringing this action), and dismissed MetLife from this action with prejudice.  (ECF No. 26).

The Court then allowed a reasonable period of discovery, and set October 6, 2023, as the deadline for the filing of dispositive motions.  (ECF No. 31).  No party filed any motions during the discovery period, and only one dispositive motion was filed; Jessie and Danny filed a motion for summary judgment on August 22, 2013.  (ECF No. 33).[2]  The motion was served on all parties, but to date, there has been no response or opposition to the motion.  (ECF No. 33, PageID.246).  Having reviewed the motion and its supporting exhibits, and the other papers on file, the Court finds that it may decide the matter on the present record.

### *Background*

At issue in this case are competing claims as to the proper beneficiary of Decedent's GM Plan benefits at the time of his death on August 7, 2021.  Decedent was enrolled in the

---

[1] Each of these eleven individuals claims to be a child of the Decedent, and will therefore be referred to collectively as the Decedent's "Eleven Children").  (ECF No. 1, PageID.2-3); ECF No.1-8, PageID.104; ECF No. 18).

[2] The motion was referred to the undersigned for a Report and Recommendation, pursuant to 28 U.S.C. § 636(b)(1)(B).

GM Plan for Basic and Optional Life Insurance coverage in the amount of $51,216.00. (ECF No. 1-4).   As a claim fiduciary, MetLife is required to administer claims in accordance with ERISA and the documents and instruments governing the GM Plan. ERISA defines a beneficiary as "a person designated by a participant, or by the terms of an employee benefit plan, who is or may become entitled to a benefit thereunder."  29 U.S.C. § 1002(8).  The GM Plan establishes the right of a GM Plan participant to name his or her beneficiary and, under a Certificate Rider, in the event no beneficiary is designated or survived the decedent, the GM Plan sets forth the following criteria for determining the proper beneficiary:

> [] No Beneficiary at YOUR DEATH
>
> If there is no Beneficiary at YOUR death for any amount of benefits payable because of YOUR death, that amount will be paid to one or more of the following persons who are related to YOU and who survive YOU:
>
> > **(a)** SPOUSE
> >
> > **(b)** Child
> >
> > **(c)** parent
>
> However, we may instead pay all or part of that amount to YOUR estate.

(ECF No. 33, PageID.255) (the "Certificate Rider").

The evidence reflects that, on August 5, 2001, Decedent first named as the sole beneficiary to the GM Plan benefits his purported then-wife, Eliza Jemison ("Eliza"), whom he had married on August 3, 1977.  (ECF No. 33, PageID.251; ECF No. 1-11, PageID.119).  Later, on July 15, 2012, Decedent named as the sole beneficiary Ronald, and

most recently, on October 5, 2015, Decedent named Lori as the sole beneficiary. (ECF No. 33, PageID.261-62; *id.*, PageID.264-66).

Because Lori was the listed beneficiary on file at the time of Decedent's death, on August 12, 2021, MetLife sent her a letter notifying her of the claim submission process and its requirements. On August 19, 2021, Lori submitted a claim form to MetLife asserting that she was entitled to receive the GM Plan benefits. (ECF No. 1-8). However, on August 20, 2021, MetLife was notified by Rena that Lori was not the legal beneficiary of Decedent's GM Plan benefits because Decedent lacked the capacity to change the designated beneficiary of the life insurance proceeds on October 5, 2015, when he named Lori. (ECF No. 1-10). Indeed, the evidence shows that on September 26, 2006, the Michigan Probate Court for the County of Genesee appointed Rena as Decedent's "full" guardian after a hearing for the appointment of a guardian of an incapacitated individual. (*Id.*, PageID.114). The probate court found "clear and convincing evidence" of Decedent's "mental deficiency" rendering him "totally without the capacity to care for himself[.]" (*Id.*). As such, the probate court appointed Rena as Decedent's guardian with the care, custody, and control of Decedent "together with all authority and responsibilities granted and imposed by law," and as his "conservator of all assets of the individual's estate." (*Id.*, PageID.113-15; ECF No. 1-9, PageID.109-11).

In light of Decedent's September 26, 2006 court-determined incapacitated status, MetLife was unable to "validate" the beneficiary designations he made in 2012 and 2015. The only beneficiary designation prior to September 26, 2006, was Decedent's naming of Eliza in 2001, but Eliza predeceased Decedent on April 8, 2002, and thus ceased to be a

4

beneficiary to the GM Plan benefits at that time.  (ECF No. 33, PageID.253; ECF No. 1-2, PageID.52; ECF No. 33, PageID.255).  *Mut. of Omaha Ins. Co. v. Losey*, 17 Mich. App. 622, 623 (1969) ("When an insured retains the right to change the beneficiary of a life insurance policy, if the beneficiary predeceases the insured and the insured dies without exercising the right, the proceeds are payable to the insured's estate.").  Moreover, on November 4, 2021, Jessie sent a notarized letter to MetLife, averring that *she* is actually Decedent's "legal spouse," as she and Decedent were married in November 1961 and "were never divorced." (ECF No. 1-13, PageID.123).  Attached to the letter was a marriage certificate reflecting that Decedent and Jessie (f/k/a Jessie Littlepage) were married on November 25, 1961.  (ECF No. 1-13, PageID.124).  Decedent and Jessie went on to have four children: Jynnifer; Donald; Ronald; and Danny, who, for reasons discussed in the next paragraph, the Court will refer to as Decedent's "Heirs."  (*Id.*).

In March 2022, Genesee County Probate Court Judge Barkey held a bench trial to determine Jessie's status as well as the Decedent's heirs.  (ECF No. 33, PageID.268).  On March 6, 2022, Judge Barkey issued an Order, stating that "[a]ppearing before the Court was the personal representative; petitioner, Rena Hankins; Jynnifer, Cedric, Andre, Timmy, and Erica Jemison; and Melissia Brown.  Lori Jemison failed to appear."  (*Id.*). Sworn testimony had been taken from "all parties present at the hearing regarding whether they were knowledgeable as to there being a decree of divorce or that a divorce occurred," and "[a]ll parties stated that they either had no knowledge of such or did not know."  (*Id.*). Ultimately, Judge Barkey found that Decedent "had not legally divorced Jessie Jemison prior to remarriage or death."  (*Id.*).  Judge Barkey held, "[t]hus, Jessie Jemison is the

surviving spouse of [D]ecedent." (*Id.*).   Judge Barkey also found that Decedent died "intestate" and "determined" that Decedent's only "heirs" were "Jynnifer Jemison, Donald Jemison, Ronald Jemison & Danny Jemison," *i.e.*, the "Heirs." (*Id.*, PageID.269).

### *Legal Standards*

Pursuant to Rule 56, the Court will grant summary judgment if "the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law."  Fed. R. Civ. P. 56(a); *see also Pittman v. Cuyahoga County Dep't of Children and Family Servs.,* 640 F.3d 716, 723 (6th Cir. 2011).  A fact is material if it might affect the outcome of the case under governing law.  *See Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 248 (1986).  In determining whether an issue of material fact exists, the Court assumes the truth of the non-moving party's evidence and construes all reasonable inferences from that evidence in the light most favorable to the non-moving party.  *See Ciminillo v. Streicher*, 434 F.3d 461, 464 (6th Cir. 2006).

The party seeking summary judgment bears the initial burden of informing the court of the basis for its motion, and must identify portions of the record that demonstrate the absence of a genuine dispute as to any material fact. *See Celotex v. Corp. v. Catrett*, 477 U.S. 317, 325 (1986); *Alexander v. CareSource*, 576 F.3d 551, 558 (6th Cir. 2009). "Once the moving party satisfies its burden, 'the burden shifts to the nonmoving party to set forth specific facts showing a triable issue.'" *Wrench LLC v. Taco Bell Corp.,* 256 F.3d 446, 453 (6th Cir. 2001) (quoting *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.,* 475 U.S. 574, 587 (1986)).  In response to a summary judgment motion, the opposing party may not rest on its pleading, nor "'rely on the hope that the trier of fact will disbelieve the movant's

denial of a disputed fact' but must make an affirmative showing with proper evidence in order to defeat the motion." *Alexander*, 576 F.3d at 558 (quoting *Street v. J.C. Bradford & Co.,* 886 F.2d 1472, 1479 (6th Cir. 1989)).  Indeed, "[t]he failure to present any evidence to counter a well-supported motion for summary judgment alone is grounds for granting the motion.'" *Id*. (quoting *Everson v. Leis*, 556 F.3d 484, 496 (6th Cir. 2009)). "Conclusory statements unadorned with supporting facts are insufficient to establish a factual dispute that will defeat summary judgment." *Id.* at 560 (citing *Lewis v. Philip Morris, Inc.,* 355 F.3d 515, 533 (6th Cir. 2004)).

A moving party with the burden of proof (typically, although as this case demonstrates, not always, the plaintiff) faces a "substantially higher hurdle." *Arnett v. Myers*, 281 F.3d 552, 561 (6th Cir. 2002).  As set forth above, the moving party without the burden of proof needs only show that the opponent cannot sustain his burden at trial. "But where the moving party has the burden – [typically] the plaintiff on a claim for relief or the defendant on an affirmative defense – his showing must be sufficient for the court to hold that no reasonable trier of fact could find other than for the moving party." *Calderone v. U.S.*, 799 F.2d 254, 259 (6th Cir. 1986) (internal citation omitted). Accordingly, summary judgment in favor of the party with the burden of proof is "inappropriate when the evidence is susceptible to different interpretations or inferences by the trier of fact." *Harris v. Kowalski*, 2006 WL 1313863, at *3 (W.D. Mich. May 12, 2006) (quoting *Hunt v. Cromartie*, 526 U.S. 541, 553 (1999)).

### *Discussion*

In their motion for summary judgment, Jessie and Danny appear to argue that the

7

record evidence establishes that there is no dispute of material fact that the GM Plan benefits belong to Decedent's legal spouse, Jessie, and the four Heirs: Jynnifer; Donald; Ronald; and Danny. (ECF No. 33, PageID.244). The argument rests on three prongs. First, they contend that the evidence is undisputed that there was no legally named beneficiary of the GM Plan surviving at the time of Decedent's death. Second, they contend that in light of Judge Barkey's rulings, it is undisputed that Jessie was Decedent's legal spouse at the time of his death, and that the four Heirs – Jynnifer, Donald, Ronald, and Danny – are his only legal heirs. Third, they argue that pursuant to the Certificate Rider – which provides that when no named beneficiary exists, benefits "will be paid to one or more of" the Decedent's "SPOUSE," "child," or "parent," or to Decedent's estate – the Court should order that the GM Plan benefits be paid to Jessie and the four Heirs.

*No Surviving Legally Named Beneficiary of the GM Plan Benefits*

Here, the evidence is undisputed that there was no surviving, legally named beneficiary of the GM Plan benefits at the time of Decedent's death on August 7, 2021. First, it is undisputed that although Decedent first named Eliza as his sole beneficiary on August 5, 2001, she predeceased the Decedent on April 8, 2002, and thus does not qualify as a named beneficiary who "survived the decedent." (ECF No. 33, PageID.251, 253, 255). Second, the evidence makes clear that, in 2006, Judge Barkey appointed Rena as Decedent's guardian with the care, custody, and control of "all authority and responsibilities granted and imposed by law" and as the conservator "of all assets of the individual's estate" after determining that Decedent suffered from a mental deficiency that rendered him "totally without the capacity to care for himself." (ECF No. 1-10,

8

PageID.113-15; ECF No. 1-9, PageID.109-11).  Thus, any subsequent naming of a beneficiary in 2012 and 2015 by Decedent was invalid, as he "could not make a valid contract while under guardianship as a mentally incompetent person." *Wies v. Brandt*, 294 Mich. 240, 247 (1940); *see also Rodenhiser v. Duenas*, 296 Mich. App. 268 ("A person is incapable in law of contracting when that person is mentally incompetent.").  As such, the record evidence establishes that at the time of Decedent's death in 2021, there was no surviving, legally named beneficiary under the GM Plan.

*Decedent's Legal Spouse and Heirs*

Pursuant to Judge Barkey's above-referenced orders, it is undisputed that Decedent's legal spouse at the time of his death was Jessie, and Decedent's only legal heirs are the four Heirs, *i.e.*, Jynnifer, Donald, Ronald, and Danny.[3]  (ECF No. 33, PageID.268-69).  The Court is bound by those determinations.  *See Harshaw v. Bethany Christian Servs.*, 714 F. Supp. 2d 751, 759 (W.D. Mich. 2010) ("A federal court must accord the same precedential value to a state-court decision as it would be accorded by that state's courts.").

*Distribution of the GM Plan Benefits Pursuant to the Certificate Rider*

The moving parties, Jessie and Danny, do not explicitly direct the Court as to how

---

[3] The Court notes that in the claim Lori Jemison filed with MetLife, she asserted that she was Decedent's "child," and in her "answer" to the complaint in this case, she "object[s]" to Jessie Jemison's claim to being Decedent's surviving spouse.  (ECF No. 1-8; ECF No. 17, PageID.167).  However, as explained above, Judge Barkey determined that Jessie was, in fact, Decedent's surviving spouse, and, despite being aware of the existence of Lori and at least 8 of Decedent's other children, determined that Decedent's only "heirs" are "Jynnifer Jemison, Donald Jemison, Ronald Jemison & Danny Jemison."  (ECF No. 33, PageID.268-69).

the GM Plan benefits should be distributed.  However, they cite the Certificate Rider and argue that where, as is the case here, no proper named beneficiary exists, "then the plan benefits become payable to the spouse, child(s), or parent" of the Decedent.  (ECF No. 33, PageID.241).  Thus, the Court construes Jessie and Danny to be asking the Court to order that the GM Plan benefits be split between Jessie and the four Heirs.  While none of the other parties to this case have objected to that request, there remains a question about such a distribution's propriety.

It is unclear on the present record why Judge Barkey determined that Decedent's only "heirs" were Jynnifer, Donald, Ronald, and Danny, while the other seven of the Eleven Children (*i.e.*, Lori, Rena, Andre, Cedric, Timmy, Erica, and Melissa) were not determined to be Decedent's "heirs."  (ECF No. 33, PageID.268-69).[4]  Indeed, Jessie characterizes those seven individuals as being "children" of the Decedent.  (ECF No. 18, PageID.170) (Jessie noting her agreement that 50% of Decedent's estate "should be divided equally with the known eleven children of Herbert Jemison: Jynnifer [], Donald [], Ronald [], Danny [], Cedric [], Andre [], Timmy [], Rena [], Lori [], Melissa [], and Erica [].").  The record in this case also includes notarized affidavits from Jynnifer, Donald, Ronald, Danny, Andre, Timmy, Rena, Melissa, and Erica, in which each avers that he or she is a "child" of Decedent and, as such, is "entitled to a portion of the death benefits from his estate . . ."  (ECF No. 18, PageID.174-82).

---

[4] It is also unclear why Jessie, having been determined to be Decedent's "surviving spouse," was not determined to be one of his "heirs."  *See* MCL 700.1104(p) (defining "heir" as "a person, *including the surviving spouse* or the state, that is entitled under the statutes of intestate succession to a decedent's property.") (emphasis added).

This issue highlights a flaw in the instant summary judgment motion.  The motion essentially argues that this Court is bound by Judge Barkey's rulings that Jessie was Decedent's surviving spouse, the four Heirs were Decedent's only heirs, and that because "the [Certificate Rider specifies] that if there are no name[d] beneficiar[ies] at the time of [the] policyholder's death the proceeds would be awarded to [the] [surviving] *spouse and heirs*."  (ECF No. 33, PageID.244) (emphasis added).  The problem is that the Certificate Rider speaks not of "heirs," but of "child[ren]," and, as just discussed, the record includes evidence – including from Jessie – that each of the Eleven Children is a child of the Decedent.  Thus, while Jessie and Danny, as the moving parties, have shown the absence of a material fact that Jessie is Decedent's surviving spouse, a factual dispute exists about whether each of the Eleven Children is a child of Decedent, and thus which of them, under the Certificate Rider, should be entitled to share in the distribution of the GM Plan benefits.

In light of that dispute, the Court should follow the Certificate Rider's alternate directive for distributing the GM Plan benefits, and order that those benefits, currently on deposit with the Court, be paid to Decedent's estate.  (ECF No. 33, PageID.255) (providing that rather than paying the GM Plan benefits to the Decedent's "SPOUSE," "child," or "parent," "we may instead pay all or part of that amount to [the Decedent's] estate.")  (ECF No. 33, PageID.255).

### *Conclusion*

For all of the foregoing reasons, **IT IS RECOMMENDED** that the instant motion for summary judgment **(ECF No. 33)** be **GRANTED IN PART**, and that the Clerk of Court be ordered to pay the GM Plan benefits on deposit with the Court to Decedent's

estate.  A personal representative of the estate can then be appointed to ensure the funds' proper distribution through the Genesee County Probate Court.

Dated: March 20, 2024                              s/David R. Grand
Ann Arbor, Michigan                                DAVID R. GRAND
                                                   United States Magistrate Judge


## NOTICE TO THE PARTIES REGARDING OBJECTIONS

The parties to this action may object to and seek review of this Report and Recommendation, but are required to act within fourteen (14) days of service of a copy hereof as provided for in 28 U.S.C. § 636(b)(1) and Fed.R.Civ.P. 72(b)(2).  Failure to file specific objections constitutes a waiver of any further right of appeal.  *Thomas v. Arn*, 474 U.S. 140 (1985); *Howard v. Secretary of HHS*, 932 F.2d 505, 508 (6th Cir.1991); *United States v. Walters*, 638 F.2d 947, 949–50 (6th Cir.1981).  The filing of objections which raise some issues, but fail to raise others with specificity, will not preserve all the objections a party might have to this Report and Recommendation.  *Willis v. Secretary of HHS*, 931 F.2d 390, 401 (6th Cir.1991); *Smith v. Detroit Fed'n of Teachers Local 231*, 829 F.2d 1370, 1373 (6th Cir.1987).  Pursuant to E.D. Mich. LR 72.1(d)(2), a copy of any objections is to be served upon this magistrate judge.  A party may respond to another party's objections within 14 days after being served with a copy.  *See* Fed. R. Civ. P. 72(b)(2); 28 U.S.C. §636(b)(1).  Any such response should be concise, and should address specifically, and in the same order raised, each issue presented in the objections.

## <u>CERTIFICATE OF SERVICE</u>

The undersigned certifies that the foregoing document was served upon counsel of record and any unrepresented parties via the Court's ECF System to their respective email or First Class U.S. mail addresses disclosed on the Notice of Electronic Filing on March 20, 2024.

s/Eddrey O. Butts
EDDREY O. BUTTS
Case Manager
